# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DONNA BONENFANT, | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Civil No. 3:05cv01508 (PCD) |
| | : | |
| MARIA KEWER, JOSEPH D'ALESIO, | : | |
| JAMES MAHER AND SCOTT | : | |
| HARTLEY, | : | |
| Defendants. | : | |

## RULING ON DEFENDANTS' MOTION TO STRIKE
## & MOTION FOR SUMMARY JUDGMENT

Plaintiff Donna Bonenfant brings this action pursuant to 42 U.S.C. § 1983, alleging that

Defendants Maria Kewer, Joseph D'Alesio, James Maher, and Scott Hartley violated her right to

equal protection as guaranteed by the Fourteenth Amendment. Defendants move, pursuant to

Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on Plaintiff's

Complaint. Plaintiff filed an opposition to Defendants' motion, and Defendants subsequently

moved to strike certain evidence proffered in support therein. For the reasons that follow,

Defendants' Motion to Strike [Doc. No. 42] is **denied**, but their Motion for Summary Judgment

[Doc. No. 40] is **granted**.

## I.     MOTION TO STRIKE

Before turning to the merits of Defendants' motion for summary judgment, the Court reviews Defendants' Motion to Strike, in which they contend that Plaintiff attached an inadmissible document to her opposition to the summary judgment motion. The document in question, the "Solieri Report," is a report prepared by Bernadette Solieri, an Internal Auditor for the State of Connecticut Judicial Branch. (See Pl.'s Opp'n Mot. Summ. J., Ex. B. ("Solieri Report").) After receiving complaints about attendance and misconduct problems among Superior Court employees, the Superior Court Operations Division of the State of Connecticut Judicial Branch enlisted Solieri and other department employees to investigate the complaints. The Solieri Report contains Solieri's factual findings and conclusions drawn from this investigation. Plaintiff claims that she obtained a copy of the Solieri Report from Susan Wandzilak, the Chief Court Reporter for the Judicial District of Stamford/Norwalk and Plaintiff's supervisor, who in turn received it from her attorney. (Pl.'s Dep. 63:14-64:10, Aug. 4, 2006.) Pursuant to Rule 56(e) of the Federal Rules of Civil Procedure, Defendants move to strike the Solieri Report on the grounds that it is hearsay and unauthenticated and therefore inadmissible at trial.

A. **Standard of Review**

Federal Rule of Civil Procedure 56(e) provides that on a summary judgment motion, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is

competent to testify to the matters stated therein." FED. R. CIV. P. 56(e). "The principles

governing admissibility of evidence do not change on a motion for summary judgment. . . .

Therefore, only admissible evidence need be considered by the trial court in ruling on a motion

for summary judgment." Merry Charters, LLC v. Town of Stonington, 342 F. Supp. 2d 69, 75

(D. Conn. 2004) (quoting Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997)).

"A motion to strike is the correct vehicle to challenge materials submitted in connection

with a summary judgment motion." Newport Elecs., Inc. v. Newport Corp., 157 F. Supp. 2d

202, 208 (D. Conn. 2001). "[A] motion to strike is appropriate if documents submitted in

support of a motion for summary judgment contain inadmissible hearsay or conclusory

statements, are incomplete, or have not been properly authenticated." Spector v. Experian Info.

Servs. Inc., 321 F. Supp. 2d 348, 352 (D. Conn. 2004) (citations omitted); see also Hollander v.

Am. Cyanamid Co., 999 F. Supp. 252, 255-56 (D. Conn. 1998).

**B.      Hearsay**

Defendants first move to strike the Solieri Report on the ground that it is inadmissible

hearsay. "Hearsay is a statement, other than one made by the declarant while testifying at the

trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID.

(801)(c). The Solieri Report does not contain Plaintiff's statements, nor was it prepared by

Plaintiff. Rather, it was allegedly prepared by Solieri and obtained by Plaintiff from Ms.

Wandzilak, who had received it from her attorney. (Pl.'s Dep. 63:14-64:10.) Plaintiff has

introduced the Solieri Report into the record to demonstrate that Solieri's findings exonerated her from allegations of wrongdoing.  (See Pl.'s Br. Opp'n Mot. Strike 1-2.)  The report is therefore offered to prove the truth of the matter asserted and constitutes inadmissible hearsay unless an exception to the hearsay rule applies.  See Merry Charters, 342 F. Supp. 2d at 75.

Plaintiff contends the report is admissible under Rule 803(8)(C) of the Federal Rules of Evidence, which provides that the following are not excluded by the hearsay rule:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

FED. R. EVID. (803)(8)(C).  See also Bridgeway Corp. v. Citibank, 201 F.3d 134, 143 (2d Cir. 2000) ("In order to fit within the purview of Rule 803(8)(C), the evidence must (1) contain factual findings and (2) be based upon an investigation made pursuant to legal authority.") Factual findings are admissible under Rule 803(8)(C) if they are presented in a final report that is the product of a factual investigation performed by a public agency or official.  See Ariza v. City of N.Y., 139 F.3d 132, 134 (2d Cir. 1998); U.S. v. Banky-Alli, No. 05-0589-CR, 2005 WL 3116754, at *3 (2d Cir. Nov. 22, 2005) (citing Parsons v. Honeywell Inc., 929 F.2d 901, 907 (2d Cir. 1991)); City of N.Y. v. Pullman, Inc., 662 F.2d 910, 914 (2d Cir. 1981).  Portions of investigatory reports which state a conclusion or opinion are admissible so long as the conclusion or opinion is based on the public official's own observations or knowledge gained from a factual investigation and satisfies Rule 803(8)(C)'s trustworthiness requirement.  Beech

Aircraft Corp. v. Rainey, 488 U.S. 153, 170, 109 S. Ct. 439 (1988). Whether the report contains "factual findings resulting from an investigation made pursuant by law" must be determined before assessing the document's trustworthiness. See Ariza, 139 F.3d at 134.

The Solieri Report is admissible under Rule 803(8)(C) because it contains factual findings based upon a factual investigation conducted under authority of law. The report is clearly a final report based on Solieri's observations and knowledge drawn from her investigation of the complaints against Plaintiff and Wandzilak. (See Solieri Report 1, 9-14.) The Solieri Report's findings are directly based on Solieri's attendance audit and the interviews conducted by her, Berry, and Maher with nearly all employees focusing on specific subjects pertaining to the investigation. (Id. 3, 5-7.) The Solieri Report therefore contains factual findings resulting from an investigation made pursuant to authority granted by law as required under Rule 803(8)(C) and is admissible so long as it is trustworthy. See Gentile v. County of Suffolk, 926 F.2d 142, 146, 151-52 (2d Cir. 1991) (conclusions in a report were admissible where report was issued by a state commission after a formal investigation of employee misconduct in a district attorney's office and police department); cf. Banky-Alli, 2005 WL 3116754 at *1, *3 (official's report inadmissible where conclusions not based on official's own observation or investigation); Ariza, 139 F.3d at 134 ("research project" inadmissible where it made generalized recommendations based on a small survey of department employees rather than specific factual findings based on a factual investigation).

Because the Solieri Report satisfied Rule 803(8)(C)'s factual findings requirement, the trustworthiness of the report is presumed.  <u>Bridgeway</u>, 201 F.3d at 143.  The party opposing admission of the report has the burden to establish lack of trustworthiness.  <u>Id.</u> (citing <u>Ariza</u>, 139 F.3d at 134); <u>see also</u> <u>Barlow v. Conn.</u>, 319 F. Supp. 2d 250, 258 (D. Conn. 2004) ("In assessing trustworthiness, the court considers (1) the timeliness of the investigation; (2) the special skill or experience of the official; (3) whether a hearing was held and the level at which conducted; [and] (4) [any motive of the investigator inconsistent with accuracy]." (citing FED. R. EVID. 803(8)(C) advisory committee's note)).  The Defendants in this case have failed to present any evidence demonstrating a lack of trustworthiness of the Solieri Report.  Furthermore, the Court has no reason to doubt the trustworthiness of the Solieri Report on its face.  Solieri's investigation, which commenced in August 2004 to review attendance records from November 2003 through March 2004, was timely.  (<u>See</u> Solieri Report 2.)  The officials involved in her investigation were all members of the Administration Unit, and no evidence presented doubts their skill, experience, or motives.  Additionally, the report is labeled as final and bears Solieri's signature and the official seal of the State of Connecticut.  (<u>Id.</u> 1.)  The Solieri Report thus contains factual findings that are trustworthy and therefore constitutes admissible evidence under the public records exception to the hearsay rule.

## C.	Authentication

Defendants also move to strike the Solieri Report on the ground that it has not been

properly authenticated. "The requirement of authentication . . . as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." FED. R. EVID. 901(a). Federal Rule of Evidence 902, however, provides that some types of documents are sufficiently self-authenticating and therefore do not require extrinsic evidence to establish authenticity, Lachira v. Sutton, No. 3:05-cv-1585 (PCD), 2007 WL 1346913, at *4 (D. Conn. May 7, 2007), including:

> A document bearing a seal purporting to be that of the United States, or of any State. . . or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution.

FED. R. EVID. 902(1). The very front page of the Solieri Report clearly displays the seal of the State of Connecticut Judicial Branch, with an accompanying signature from Solieri. (Solieri Report 1.) The seal and signature sufficiently self-authenticate the document under Rule 902(1); therefore Defendant's motion to strike on this basis is without merit.

### D.    Probative Value And Unfair Prejudice

Alternatively, Defendants claim that, pursuant to Rule 403 of the Federal Rules of Evidence, the report should be excluded because its probative value is substantially outweighed by its unfair prejudice to the Defendants. (Defs.' Mem. Supp. Mot. Strike 6-7.) In general, in the absence of a significant showing of unfair prejudice, evidence with substantial probative value should not be excluded. Gentile, 926 F.2d at 151 (citation omitted). "Because virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403 the prejudice

must be unfair. . . [involving] some adverse effect beyond tending to prove a fact or issue that justifies admission." Costantino v. Herzog, 203 F.3d 164, 174-75 (2d Cir. 2000). The Solieri Report is probative of whether the employee allegations that led to the dismissal of the Plaintiff were substantiated. Defendants have made no showing, other than conclusory allegations, as to how the Solieri Report will unfairly prejudice them, let alone demonstrated that this supposed prejudice outweighs the probative value of the report. The Defendants therefore have not made a significant showing of prejudice to warrant the exclusion of the Solieri Report under Rule 403.

For the foregoing reasons, Defendants' motion to strike the Solieri Report is denied, and the Solieri Report will be considered with the other evidence presented by Plaintiff in opposition to Defendants' motion for summary judgment.

## II.   MOTION FOR SUMMARY JUDGMENT

### A.   Background

Plaintiff Bonenfant is a Court Recording Monitor who has been employed by the Judicial Branch of the State of Connecticut since 1982. (Defs.' Local Rule 56(a)1 Statement ¶ 1; Pl.'s Dep. 13:4-11.)[1] The responsibilities of the Court Recording Monitor include: operating electronic recording equipment to record verbal testimony during courtroom proceedings; preparing transcripts and appeal papers; and performing clerical duties as assigned. (Kewer Aff.

---

[1]     With regard to facts taken from Defendants' Rule 56(a)(1) Statement, the facts are admitted unless otherwise noted.

Ex. F.)   Court Recording Monitors work under the general supervision of the Official Court Reporter or other employee of a higher grade.  (Id.)  Plaintiff is not and has never held the position of Official Court Reporter, whose responsibilities include operating stenography equipment to record verbatim testimony, and which requires a certification from the Board of Examiners of the State of Connecticut.  (Defs.' Local Rule 56(a)(1) Statement ¶ 2; Kewer Aff. ¶ 25, Ex. G.)  While Plaintiff was employed as Court Recording Monitor for the Stamford Judicial District, Susan Wandzilak was the Official Court Reporter and Plaintiff's supervisor.  (Solieri Report; Pl.'s Dep. 19:14-17.)

Defendant Joseph D'Alesio, Executive Director of the Superior Court Operations Division of the State of Connecticut Judicial Branch ("Court Operations"), manages the various clerks' offices throughout Connecticut and has sole authority to terminate or suspend Court Operations employees.  (Defs.' Local Rule 56(a)(1) Statement ¶¶ 3, 4, 17; D'Alesio Aff. ¶ 3; Kewer Aff. ¶ 7.)  Defendant Scott Hartley is Deputy Director of Court Operations.  (Defs.' Local Rule 56(a)(1) Statement ¶ 9; Hartley Aff. ¶ 2.)  Hartley's duties since August 2003 include directing operations and administrative activities for the Court Transcript Services section, which includes all Official Court Reporters and Court Recording Monitors.  (Defs.' Local Rule 56(a)(1) Statement ¶ 10; Hartley Aff. ¶ 3.)  Defendant James Maher is the Director of the Administration Unit of Court Operations, which handles all financial matters within the Superior Courts of Connecticut.  (Defs.' Local Rule 56(a)(1) Statement ¶ 5; Maher Aff. ¶¶ 2, 3.)

Defendant Maria Kewer has worked for the Judicial Branch for fifteen years and for Court Operations for seven years. (Kewer Aff. ¶ 2.) From November 2001 until May 5, 2005, she was a Program Manager for Court Operations; as such, her duties included implementing, monitoring, and evaluating the effectiveness and compliance of programs, policies, and procedures of the Judicial Branch. (Defs.' Local Rule 56(a)(1) Statement ¶ 14; Kewer Aff. ¶¶ 3, 4.) As Program Manager, Kewer also conducted investigations and assigned members of her staff to conduct investigations as needed. (Defs.' Local Rule 56(a)(1) Statement ¶ 7; Maher Aff. ¶ 4.) D'Alesio supervises Maher directly and oversees Kewer for Labor Relations purposes. (Defs.' Local Rule 56(a)(1) Statement ¶¶ 8, 16; Maher Aff. ¶ 5; Kewer Aff. ¶ 6.) Maher supervises lower level employees as assigned, including Kewer and Hartley. (Defs.' Local Rule 56(a)(1) Statement ¶ 7; Maher Aff. ¶ 4.)

In January and May 2004, Court Operations received complaints from employees at the Stamford Court Reporters Office of mismanagement, unfairness, and retaliatory practices. (Defs.' Local Rule 56(a)(1) Statement ¶ 24; Kewer Aff. ¶ 10.) Among these complaints were letters written by two former per diem Court Recording Monitors, Karen Pacchiana and Nancy Font, regarding alleged misconduct by Plaintiff and her supervisor, Official Court Reporter Susan Wandzilak. (Defs.' Local Rule 56(a)(1) Statement ¶ 27; Pl.'s Dep. 46:17-48:19.) Karen Pacchiana's January 2004 complaint alleged that Plaintiff favored certain employees, stole money from the State of Connecticut, stole transcripts, and received all the "good jobs" from

Ms. Wandzilak in return for favors. (Defs.' Local Rule 56(a)(1) Statement ¶ 28; Pl.'s Dep. 46:17-48:19.) Approximately one week after Court Operations received this complaint, Carrie Pacchiana, another per diem employee and daughter of Karen Pacchiana, requested a change from a three- to a four-day work week (Defs.' Local Rule 56(a)(1) Statement ¶¶ 26); according to Defendant Kewer, Plaintiff later admitted that she alone denied Carrie Pacchiana's request. (Id. ¶ 42; Kewer Aff. ¶¶ 12, 20). Nancy Font, also a per diem Court Recording Monitor, alleged in her complaint to Court Operations that Plaintiff had been stealing money from the State for years and had used State money to pay male employees to assist her when she moved into a new house. (Defs.' Local Rule 56(a)(1) Statement ¶ 29; Pl.'s Dep. 46:17-48:19.)

Based on the complaints of alleged misconduct against Bonenfant and Wandzilak, Defendant Kewer, in her capacity as Program Manager, assigned Raymond Berry, a member of her staff, to conduct an investigation. (Maher Aff. ¶¶ 9, 10.) Due to the gravity of the complaints received, Kewer requested that Defendant Maher get involved with the investigation as well. (Id.) Defendant Kewer notified Plaintiff by letter dated June 10, 2004, that she would be suspended with pay pending the outcome of an investigation into the complaints. (Defs.' Local Rule 56(a)(1) Statement ¶ 34; Kewer Aff. ¶ 13, Ex. A.) Defendant Hartley hand delivered Kewer's June 10th letter to Plaintiff; this was Hartley's only direct involvement in the investigation or subsequent discipline of Plaintiff. (Defs.' Local Rule 56(a)(1) Statement ¶¶ 30, 33; Hartley Aff. ¶¶ 9, 10.)

The investigation had two major components. First, Court Operations requested that Bernadette Solieri, Internal Auditor of the State of Connecticut Judicial Branch, conduct an attendance audit. (Solieri Report 1, 9.) Solieri reviewed attendance records of all permanent and per diem employees of the Stamford Official Court Reporter Office for accuracy, completeness, and compliance with Judicial Branch policies and procedures. (Id. at 2, 9.) Second, based on the audit results, Maher and Berry conducted interviews of 21 permanent and per diem employees. (Id. at 10.) Solieri submitted the findings of the investigation in her final report, bearing her signature, to Kewer, Maher, and Berry on August 12, 2004. (Id. at 1.) Based on her investigation, Solieri concluded in her report that due to Wandzilak's frequent absences, Plaintiff became the "de facto supervisor" in the Stamford Official Court Reporter Office, assuming responsibility for Wandzilak's duties when she was not in the office. (Id. at 12; Maher Aff. ¶ 11.) As de facto supervisor, Plaintiff fulfilled Wandzilak's duties of running the office on a daily basis, in particular assuming Wandzilak's role of making transcript-typing assignments. (Solieri Report 12.)

Defendants claim that the investigation revealed overwhelming feelings of mistreatment and favoritism in the office, generated by disparate court and transcript assignments. (Defs.' Local Rule 56(a)(1) Statement ¶ 35; Kewer Aff. ¶ 14; Maher Aff. ¶ 11.) Defendants further claim that Plaintiff took advantage of Wandzilak's absence to give herself the most lucrative typing assignments and first choice of transcript requests, thereby using her de facto supervisor

role for personal gain.  (Id.)  Plaintiff refutes these claims by citing the findings in the Solieri Report, which concludes that all of the allegations against Plaintiff were unsubstantiated.  (Pl.'s Local Rule 56 Statement ¶ 35; Solieri Report 12.)  Although Plaintiff did give herself the most lucrative typing assignments, Solieri's report concluded that she was instructed to do so by Wandzilak because it was office practice to give these assignments to the most senior employees.  (Solieri Report 12.)  Because Plaintiff was the most senior employee in the office, she received these lucrative transcripts, but, according to the Solieri Report, she also typed the less desirable transcripts that other permanent and temporary employees refused to do.  (Id. 13.)

On September 2, 2004, Kewer, in her capacity as Program Manager, conducted a predisciplinary meeting with Plaintiff.  (Defs.' Local Rule 56(a)(1) Statement ¶¶ 37, 38; Kewer Aff. ¶¶ 16, 17.)  Kewer claims that at the predisciplinary meeting, Plaintiff admitted that she had a typed a letter, allegedly from the Official Court Reporter, denying Carrie Pacchiana an increase from a three- to a four-day work week.  (Defs.' Local Rule 56(a)(1) Statement ¶¶ 41, 42; Kewer Aff. ¶¶ 19, 20.)  Kewer stated that because Plaintiff did not explain this action, "a reasonable person can only derive that the denial was in retaliation for Carrie Pacchiana's mother's complaint."  (Id.)  Plaintiff rebuts this allegation by pointing to the Solieri Report, which states that all of the allegations against Plaintiff, including that of retaliation, were unsubstantiated.  (Defs.' Local Rule 56(a)(1) Statement ¶¶ 41, 42; Solieri Report 5.)

Despite the findings of the Solieri Report, Kewer concluded that Plaintiff used her de

facto supervisor role for personal gain, thereby violating the Judicial Branch Mission and Non-Discrimination in the Workplace policies. (Defs.' Local Rule 56(a)1 Statement ¶ 46; Kewer Aff. ¶ 22; Kewer Aff. Ex. D.) In a letter to D'Alesio, Kewer recommended that Plaintiff be suspended from work without pay. (Id.) D'Alesio made the final determination of suspending Plaintiff for 10 days without pay. (Defs.' Local Rule 56(a)1 Statement ¶ 77; Kewer Aff. ¶ 24; Kewer Aff. Ex. E.)

On September 26, 2005, Plaintiff filed suit in this Court seeking economic and emotional damages for her suspension without pay, claiming that the Defendants violated her equal protection rights as secured by the Fourteenth Amendment and enforced through Sections 1983 and 1988 of Title 42 of the United States Code. (Compl. ¶¶ 12, 13.) Plaintiff is suing the Defendants only in their individual capacities.[2] (Id. ¶ 4.) Wandzilak also brought an action in this Court, heard before Judge Janet C. Hall, against Defendants Maher and Kewer stemming from the same investigation. See generally Wandzilak v. Maher, No. 3:05-cv-1122 (JCH), 2007 WL 708630, at *1 (D. Conn. Feb. 9, 2007). On December 4, 2006, Defendants in this case filed a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

---

[2]     Plaintiff claims that the Defendants acted jointly and in concert with each other in violating her equal protection rights. (Compl. ¶ 6.) In her opposition to the summary judgment motion, Plaintiff claims in passing that the Defendants are jointly and severally liable through a § 1983 conspiracy to deprive the Plaintiff of her civil rights. (Mem. In Opp. Summ. J.13.) However, nowhere in her complaint does the Plaintiff adequately plead a § 1983 conspiracy claim, and accordingly this claim will not be addressed.

**B.      Standard of Review**

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  No genuine issue of material fact exists, making summary judgment appropriate, when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

On a motion for summary judgment, the moving party has the burden of demonstrating that the nonmoving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  To defeat the motion for summary judgment, the non-moving party must then present "sufficient evidence supporting the claimed factual dispute [which would] require a jury or judge to resolve the parties' differing versions of the truth at trial." Anderson, 477 U.S. at 249.  When determining if there is an issue of material fact, the Court draws "all factual inferences in favor of the party against whom summary judgment is

sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." Rodriguez v. City of N.Y., 72 F.3d 1051, 1061 (2d Cir. 1995) (internal citations omitted). A party opposing summary judgment, however, "may not rest upon the mere allegations or denials of the adverse party's pleading," but rather is required to "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). The non-movant cannot "escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts" or through "mere speculation or conjecture." Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990) (citations omitted). The non-moving party additionally may not rely "on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

### C.    Discussion

Plaintiff contends that Defendants intentionally and irrationally or maliciously punished her differently for conduct engaged in by other similarly situated Court Recording Monitors, [3] thereby violating her rights under the Equal Protection Clause of the Fourteenth Amendment.

---

[3]    In her Complaint, Plaintiff claims that the Defendants treated her differently from other "Court Reporters and Court Recording Monitors identically situated to [Plaintiff]." (Compl. ¶ 9.) Court Recording Monitors perform different jobs than Court Reporters, who must be certified for the job and are paid at a higher rate. Plaintiff has always been a Court Recording Monitor, not a Court Reporter. (Kewer Aff. ¶ 25.) Plaintiff claims that this statement in the complaint is a mistake, and that she is only claiming that she is similarly situated to Court Recording Monitors, not to Court Reporters. (Pl.'s Dep. 2:4-12.) The Court will therefore disregard the allegation regarding Court Reporters.

16

(Compl. ¶¶ 9-12.)   Although the Equal Protection Clause is most commonly used to allege discrimination based on membership in a protected class, the clause's guarantee also extends to individuals who allege no specific class membership.  See Neilson v. D'angelis, 409 F.3d 100, 104 (2d Cir. 2005); Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001).

By alleging that Defendants acted maliciously or irrationally (Compl. ¶ 11), Plaintiff alleges a claim relying on the theory of selective enforcement from the line of cases originating in LeClair v. Saunders, 627 F.2d 606 (2d Cir. 1980), as well as the "class of one" theory derived from the Supreme Court decision in Village of Willowbrook v. Olech, 528 U.S. 562, 120 S. Ct. 1073, 145 L. Ed. 2d. 1060 (2000).  Accordingly, the Court will address her equal protection claim under both theories.  See Gordon v. Marquis, No. 3:03-cv-01244 (AWT), 2007 WL 987553, at *12 (D. Conn. Mar. 31, 2007).  While the Second Circuit has not resolved the question of whether there truly is a distinction between selective enforcement and class of one equal protection theories, courts in this circuit have repeatedly treated them as distinct theories with distinct elements of proof and have accordingly evaluated them as separate claims.  See, e.g., Bizzarro v. Miranda, 394 F.3d 82, 86 (2d Cir. 2005); Cobb v. Pozzi, 363 F.3d 89, 109-10 (2d Cir. 2004); Gordon, 2007 WL 987553 at *11-12; Morningside Supermarket Corp. v. N. Y. State Dep't of Health, 432 F. Supp. 2d 334, 340 (S.D.N.Y. 2006).

An essential element of both selective enforcement and class of one equal protection claims is a showing of disparate treatment of similarly situated individuals.  See, e.g., Longmoor

v. Nilsen, 329 F. Supp. 2d 289, 297 (D. Conn. 2004); Sweeney v. Leone, No. 3:05-cv-871

(PCD), 2006 WL 2246372, at *13 (D. Conn. July 31, 2006).  To establish an equal protection

violation upon the theory of selective enforcement, Plaintiff must prove that:

> (1) [as] compared with others *similarly situated*, [Plaintiff] was selectively
> treated; and (2) that such selective treatment was based on impermissible
> considerations such as race, religion, intent to inhibit or punish the exercise of
> constitutional rights, or *malicious or bad faith intent to injure a person.*

Diesel v. Town of Lewisboro, 232 F.3d 92, 103 (2d Cir. 2000) (quoting LeClair, 627 F.2d at

609-10) (emphasis added).  Alternatively, to prove a class of one equal protection claim under

Olech, Plaintiff need not prove that she was disciplined because of Defendants' malice or bad

faith.  Cobb, 363 F.3d at 110.  Rather, to prevail under Olech, Plaintiff must show that she has

been "intentionally treated differently from others similarly situated and that there is no rational

basis for the difference in treatment."  Olech, 528 U.S. at 564, 120 S. Ct. 1073.

To prevail under either theory of the Fourteenth Amendment, Plaintiff must demonstrate

that she was intentionally treated differently by others similarly situated.  To successfully do so,

the level of similarity between Plaintiff and her comparators must be extremely high.  Neilson,

409 F.3d at 104 (differentiating between the more stringent standard of similarity to comparators

for class of one claims than those based on membership in a protected class).  The plaintiff must

establish that she was disparately treated from a person who is "prima facie identical in all

material respects."  Gordon, 2007 WL 987553 at *13 (quoting Fago v. City of Hartford, No.

3:02-cv-1189 (AHN), 2006 WL 860126, at *7 (D. Conn. March 31, 2006)).  Accordingly, the

18

plaintiff must prove that:

> (i) no rational person could regard the circumstances of the plaintiff to differ
> from those of a comparator to a degree that would justify the differential
> treatment on the basis of a legitimate government policy; and (ii) the similarity
> in circumstances and difference in treatment are sufficient to exclude the
> possibility that the Defendant[s] acted on the basis of a mistake.

Neilson, 409 F.3d at 105.

Although the question of whether parties are similarly situated is a fact-intensive inquiry that is generally inappropriate for summary judgment, a court may properly grant summary judgment in a defendant's favor where no reasonable jury could find that the persons to whom the plaintiff compares herself are similarly situated. Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006). To meet this standard, the record must show evidence of actual instances where similarly situated employees went undisciplined for similar conduct; a plaintiff's conclusory allegations based on "common knowledge" rather than on direct personal knowledge of differential treatment of similarly situated individuals cannot suffice to establish her claim. Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997); Sweeney, 2006 WL 2246372, at *13. In Wandzilak v. Maher, the court concluded that Wandzilak had not established that she was similarly situated in all material aspects as her comparators where the record contained only gossip, speculation, and reflections of a general consensus among her co-workers that her comparators were not disciplined for engaging in similar conduct. 2007 WL 708630 at *3-5. Such general and conclusory statements were not based on Wandzilak's

personal knowledge and were therefore insufficient to substantiate her equal protection claim.
Id. at *5.

Plaintiff in this case has similarly failed to provide sufficient evidence to prove that she is similarly situated in all material respects to any other employee.  At her deposition, Plaintiff named three Court Recording Monitors as being similarly situated and differently treated: Angelina Phillips, Gail Beiler, and "Gloria-Ann."  (Pl.'s Dep. 34:4-25.)  Plaintiff claims that she heard from Wandzilak and Ann Sohan, her cousin, that Ms. Phillips, Ms. Beiler, and Gloria-Ann took over the responsibilities of the Official Court Reporters in their absence.  (Defs.' Local Rule 56(a)1 Statement ¶¶ 52, 61; Pl.'s Dep. 35:1-38:10.)  Plaintiff has never worked with these women or spoken to them directly about their work situations; rather, she claims that her knowledge about their conduct in the absence of Official Court Reporters is based on her "experience."  (Id. at 42:16-44:15.)  Plaintiff also identifies a fourth employee, Deidre Clement, who has allegedly assumed the role of de facto supervisor during the Official Court Reporter's absence.  However, she has not demonstrated how she knows that Clement has filled this role or even whether Clement holds the same title of Court Recording Monitor.  (See Pl.'s Resp. Defs.' Interrog. Nos. 17, 21.)  Plaintiff has presented no more substantive evidence than did Wandzilak, whose allegations based on speculation and supposed common knowledge of other co-workers' experiences could not save her equal protection claim on a summary judgment motion. Plaintiff's conclusory statements based on "common knowledge," rather than direct personal

knowledge of actual instances of differential treatment of Court Recording Monitors who assumed the responsibilities of absent Court Reporters, similarly cannot save her equal protection claim.

Plaintiff has also failed to show that Defendants intentionally treated her differently than others similarly situated or that they consciously applied a different standard of enforcement to similarly situated employees. See LaTrieste Restaurant v. Vill. of Port Chester, 188 F.3d 65, 70 (2d Cir. 1999). In Wandzilak, the court found that Wandzilak's personal knowledge that a comparator had been investigated for misconduct did not establish that Defendants intentionally and knowingly treated Wandzilak differently, absent proof that they themselves had participated in the investigation of the comparator and that the comparator's investigation was conducted differently than Wandzilak's. Wandzilak, 2007 WL 708630 at *5. Similarly, Plaintiff Bonenfant claims only that Defendants must have known, based on their "common sense," that her comparators assumed their supervisors' responsibilities in their absence. (Pl.'s Dep. 54:11-55:22.) Such conclusory statements about Defendants' knowledge does not prove their actual knowledge of her comparators' experience. See Shumway, 118 F.3d at 64; Sweeney, 2006 WL 2246372 at *13. Even assuming that Defendants knew of specific instances in which Court Recording Monitors assumed the duties of their absent supervisors, Plaintiff has still presented even less evidence than did Wandzilak to substantiate her claim: she has failed to make any showing that her comparators were ever subject to complaints of misconduct or investigations of

their practices.  Unlike Wandzilak, Plaintiff has no personal knowledge as to whether *any* of the Court Recording Monitors to whom she compares herself have *ever* been investigated by the State for complaints of similar conduct, let alone if similar complaints were even filed.  (Defs.' Local Rule 56(a)1 Statement ¶¶ 53-60; Pl.'s Dep. 59:5-61:3.)  The most evidence that Plaintiff can provide is that she had knowledge that investigations took place at Phillips' and Beiler's courthouses, but she had no knowledge of who was investigated and for what purpose.  (Pl.'s Dep. 34:4-37:13.)  Even if such investigations had been conducted, Plaintiff has not shown that Defendants knew of such comparable investigations when they investigated her conduct and disciplined her.  In fact, Defendants' affidavits state that none of the Defendants knew of any complaints or investigations of the conduct of Plaintiff's comparators.  (Defs.' Local Rule 56(a)1 Statement ¶¶ 67, 70; Kewer Aff. ¶ 31; Maher Aff. ¶19; Hartley Aff. ¶ 12; D'Alesio Aff. ¶ 13.)  Therefore, there is no genuine issue of material fact that the Defendants intentionally treated the Plaintiff differently from other similarly situated employees.

Because the Plaintiff has failed to establish that she was similarly situated to her comparators, or that she was disparately treated from her comparators by Defendants, her claims under both the selective enforcement and class of one equal protection theories must necessarily fail.  See Longmoor, 329 F. Supp. 2d at 297; Conlon v. Austin, No. 3:00-cv-1027 (PCD), 2001 WL 34546530, at *6 (D. Conn. Oct. 2, 2001).  As such, there is no need for the Court to determine as a matter of law whether Defendants acted either irrationally or maliciously in their

decision to discipline Plaintiff as they did. Unfortunately for Plaintiff, the record presented does raise questions of material fact as to whether Defendants acted without rational basis or with malice in deciding to suspend her without pay, contrary to the findings in the Solieri Report exonerating Plaintiff of any alleged abuse of power for personal gain. (See Solieri Report 5-7.) See Bizzarro, 394 F.3d at 88-89 (summary judgment inappropriate if a jury could reasonably find no rational basis existed for defendants' conduct). However, Plaintiff's failure to establish that Defendants intentionally treated her differently from others similarly situated is fatal to her equal protection claim, whether treated as a class of one or a selective enforcement claim, and Defendants are therefore entitled to summary judgment on Plaintiff's claim. See Longmoor, 329 F. Supp. 2d at 297.

III.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Strike [Doc. No. 42] is **denied**, and Defendants' Motion for Summary Judgment [Doc. No. 40] is **granted**. The clerk may close the file.

SO ORDERED.

Dated at New Haven, Connecticut, this __29th__ day of August, 2007.

_____/s/_____
Peter C. Dorsey, U.S. District Judge
United States District Court